UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RAYMOND BARTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 23-10051 |
| ) | |
| v. ) | Hon. |
| ) | |
| SHELDON NEELEY, and ) | |
| CITY OF FLINT, MICHIGAN ) | |
| ) | |
| Defendants. ) | |
| ) | |

## FIRST AMENDED COMPLAINT

For his complaint against Defendants Sheldon Neeley and the City of Flint, Michigan, Plaintiff Raymond Barton, by and through his counsel, Arnold E. Reed & Associates, P.C., alleges the following:

## Overview

1. As a firefighter and Fire Chief, Plaintiff Raymond Barton ("Chief Barton") served Defendant City of Flint ("the City") for more than four decades, regularly risking his own life to protect the City's residents. In 2022, the City's mayor, Defendant Sheldon Neeley ("Mayor Neeley") fired Chief Barton because he refused to serve Mayor Neeley's personal, political interests by lying to the public in a cover-up of gross malfeasance and fraudulent conduct by two firefighters, which

resulted in the death of two children. Chief Barton's discharge violated his federal rights, including his free-speech rights under the First Amendment, and the public policy of Michigan. In addition, Mayor Neeley's wrongful conduct constituted tortious interference with Chief Barton's contractual relationship with the City. Chief Barton brings this action to seek redress from his personal injuries and to vindicate the public's interest in honest and transparent conduct by the public servants who have the duty to protect the public's health safety.

## **Parties, Jurisdiction and Venue**

2.  Plaintiff Raymond Barton lives and conducts business in Genesee County, Michigan.

3.  Defendant City of Flint is a Michigan municipal corporation located in Genesee County, Michigan.

4.  Defendant Sheldon Neeley currently serves as the Mayor of the City and lives and conducts business in Genesee County, Michigan.

5.  With respect to Chief Barton's claims under federal law, this Court has subject-matter jurisdiction pursuant to 28. U.S.C. § 1331 and 28 U.S.C. 1343(a)(4). With respect to Chief Barton's claims under Michigan law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Chief Barton's state and federal claims are part of the same case or controversy.

6. This Court has personal jurisdiction over the City and Mayor Neeley because they are located and conduct business within this judicial district.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because at least a substantial part of the events or omissions giving rise to Chief Barton's causes of action occurred in this judicial district.

## Factual Background

8. Chief Barton is a life-long resident of the City and has devoted his life to public service, protecting the health and safety of the people of Flint.

9. Chief Barton began working as a firefighter for the City's fire department in 1987, retiring from that position in 2014. In 2016, at the request of the City's then-mayor, Karen Weaver, he returned to the fire department to serve as Fire Chief, continuing to lead the department until 2022.

10. Throughout his service over more than three decades in the fire department, he was never subject to any discipline and has no negative remarks against him in his employment record.

11. As a result of his public service and his spotless record, Barton is loved and well-respected throughout Flint and Genesee County.

12. All of this began to unravel for Chief Barton at the end of May 2022, after a residential fire in the City.

3

13. On May 28, 2022, a two-alarm electrical fire broke out in a house on Pulaski Street. Upon information and belief, three fire trucks and two squads were dispatched to the scene. All together, six firefighters who arrived at the fire. All six of those firefighters were informed that there were probably residents still in the house.

14. The fire at the house started downstairs and was primarily confined to a sofa chair. The flames had vented out of a nearby window, which helped preserve visibility on both the upstairs and downstairs levels of the house.

15. Two of the firefighters, Fire Sgt. Daniel Sniegocki and Michael Zlotek entered the home. At first, Sniegocki used a hose to fight the fire on the first floor, and he directed Zlotek to go to the second floor to conduct a search for any persons in the home.

16. After a while, Sniegocki went upstairs to assist Zlotek with the search. Both firefighters claimed to have thoroughly searched all of the rooms on the upper level. Zlotek claimed that they used infrared equipment and thermal imaging cameras during the search, to enhance their ability to find persons who might not be visible to the naked eye.  After claiming to have conducted a thorough and complete search, both firefighters came down to the first floor and told the other firefighters that the house was all clear, with "no entrapment," which meant that there were no people in the house.

17. At that point, a second set of firefighters entered the home, went upstairs, and immediately found ZM , age 12, and LM , age 9, in a bedroom. ZM and LM were brothers who lived in the home. The firefighters found LM on the floor in the doorway of their shared bedroom; ZM was lying in the bed in that room. Neither boy was covered by any objects or obstructions; they were visible to the naked eye. The boys were discovered approximately seven minutes after Sniegocki and Zlotek had asserted that the house was all clear.

18. It was the next day when Chief Barton learned about the fire on Pulaski Street and about Sniegocki's and Zlotek's failure to find the two boys. In light of all of the available information about the fire, he recognized that Sniegocki and Zlotek must have been lying about what they did to search the house because, if they had conducted the search as they claimed, they would have found ZM and LM. Shortly thereafter, Chief Barton contacted Mayor Neeley to discuss what he had learned about the fire and about Sniegocki's and Zlotek's gross misconduct and malfeasance. Chief Barton also continued to investigate the matter.

19. Sniegocki and Zlotek did not cooperate with the investigation. They initially refused to give complete reports about their actions at the fire; and when they did finally submit their reports, Chief Barton concluded that they were false. Chief Barton asked the two firefighters to correct their reports to include information

about how they had made mistakes in looking for the two children, but they informed Chief Barton that they were unwilling to correct the factual misrepresentations in their official reports.

20. On the basis of Sniegocki's and Zlotek's dishonesty and failure to fulfill their duties, Chief Barton recommended that the two firefighters be suspended without pay pending a final investigation and that they be discharged at the conclusion of that investigation.

21. When Chief Barton informed the city council and other city officials of his recommendations, Mayor Neeley instructed Chief Barton to change his factual findings and recommendations.

22. Mayor Neeley wanted Chief Barton to alter official reports to disguise the firefighters' misconduct, suspend the firefighters with pay, and drop his recommendation that they be discharged.

23. Mayor Neeley informed Chief Barton that he was up for re-election and that his wife was up for election for state representative and that both of them needed the support of the firefighters' union.

24. Mayor Neeley wanted to cover up Sniegocki's and Zlotek's wrongdoing and fraud for the sole purpose of winning personal political support from the firefighter's union.

25. In response, Chief Barton told Mayor Neeley that he served the citizens of Flint and had a duty to be truthful in the performance of his job as Fire Chief; and, in his personal capacity, Chief Barton was unwilling to make false statements or profess professional judgments that he did not actually hold.

26. In particular, Chief Barton was unwilling to participate in a cover-up of firefighter misconduct that was likely motivated by racism.

27. Chief Barton also advised Mayor Neeley that dishonesty about the firefighters' conduct would be problematic for another reason: ZM and LM's mother was planning a lawsuit and any false statements about the fire and the firefighters' conduct were likely to be exposed in the course of the legal process.

28. Chief Barton informed Mayor Neeley that he would not lie if he was called upon to make statements or answer questions under oath in the litigation brought by ZM and LM's mother.

29. Mayor Neeley continued to insist that Chief Barton change his recommendations and permit the firefighters to make false statements in the official reports about their conduct at the fire.

30. Chief Barton continued to refuse to join Mayor Neeley's cover-up. In October, Chief Barton learned that Mayor Neeley that had unilaterally and surreptitiously changed the official recommendation that was attributed to Chief Barton.

31. Rumors started to circulate in Flint about the recommendation regarding Sniegocki and Zlotek.

32. Mayor Neeley instructed Chief Barton to make a public announcement saying that he initiated the change and agreed with it.

33. Chief Barton refused, and Mayor Neeley continued to insist that Chief Barton had to make a public statement that falsely represented what his findings and recommendations had been.

34. Once again, Chief Barton reminded Mayor Neeley he would not make false statements, either to the public or in the legal proceedings arising from the death of the two boys.

35. Chief Barton was also reluctant to make public statements that would paper over the obvious racial dynamic of the controversy about Sniegocki and Zlotek.

36. Members of ZM and LM's family, including their parents, attended a city council meeting and demanded answers from Chief Barton and others about what was being done to discipline Sniegocki and Zlotek. They accused Chief Barton of lying to them and of breaking his promise to hold the firefighters responsible for their misconduct.

37. Chief Barton addressed the meeting and explained that he had not changed his recommendation and that he wanted to discharge Sniegocki and Zlotek from the fire department.

38. Chief Barton believed that an honest response to these citizen complaints was necessary to maintain public confidence in the fire department.

39. Given that the City had a large African-American population and, and given the history of racism by City officials, Chief Barton believed that public confidence in the fire department would be undermined if City officials failed to acknowledge readily apparent racial issues.

40. Nine days after winning re-election, Mayor Neeley called Chief Barton into his office and told Chief Barton to resign as fire chief or be fired because Chief Barton had refused to serve Mayor Neeley's personal interests by participating in the cover-up of the firefighters' misconduct.

41. Chief Barton refused to resign, telling Mayor Neeley that he had done nothing wrong.

42. Mayor Neeley then fired Chief Barton because Chief Barton had been unwilling to make false statements to the public about what he had actually recommended regarding Sniegocki and Zlotek and about the substance and circumstances of the Fire Department's investigation.

**Count I – Deprivation of Federal Rights under Color of State Law**
**(42 U.S.C. § 1983)**

9

43. Chief Barton incorporates the foregoing paragraphs by reference.

44. At all times relevant to this Complaint, Mayor Neeley was acting under color of state law.

45. Mayor Neeley violated Chief Barton's federal rights, including his rights under the First Amendment to the United States Constitution, by, among other things:

(a). asserting that Chief Barton's continued employment with the City was conditioned on his willingness to serve Mayor Neeley's personal political interests by making false statements to the public;

(b). coercing Chief Barton into making false statements of fact and opinion in the service of a cover-up that was contrary to the public interest but that was politically advantageous for Mayor Neeley;

(c). discharging Chief Barton from employment with the City because he refused to make false statements or to participate in Mayor Neeley's cover-up of Sniegocki's and Zlotek's malfeasance in the May 28, 2022 house fire, which caused the death of ZM and LM.

46. As a direct and proximate result of the deprivation of rights by Mayor Neeley, Chief Barton has been placed in financial distress and suffered a loss of earnings, benefits, earning and benefit capacity, and the ability to work, and he will continue to suffer such losses in the future. In addition, Chief Barton has been

required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Chief Barton respectfully requests that this Court award him monetary damages in excess of $75,000.00, to wit: $10,000,000.00 including punitive or exemplary damages, as well as costs, and any attorneys' fees and any other legal and any other equitable relief to which he may be entitled. Chief Barton's monetary damages include, but are not limited to:

    (a). economic losses, such as lost earnings, benefits, earning and benefit capacity, and the ability to work;

    (b). all of his compensable litigation costs in this case, including expert witness fees, copying charges, and filing fees, among other things; and

    (c). his attorneys' fees in this case that can be taxed as costs.

**Count II – Wrongful Discharge in Violation of Michigan's Public Policy**

47. Chief Barton incorporates the foregoing paragraphs by reference.

48. At all times relevant to this Complaint, Chief Barton engaged in conduct protected under the public policy of the State of Michigan. Among other things, such conduct included:

    (a). assuring that the official reports of the City's Fire Department included truthful information;

(b). making accurate and truthful findings about the conduct of firefighters, especially with respect to conduct that directly affected the health and safety of members of the public;

(c). developing policy recommendations for the Fire Department on the basis of accurate and truthful information; and

(d). making truthful statements to the public about the nature of and reasons for the Fire Department's decisions regarding policy and personnel.

49. Defendants discharged Chief Barton from his employment as Fire Chief because Chief Barton engaged in conduct protected by the public policy of the State of Michigan.

50. Defendants' discharge of Chief Barton violated the public policy of the State of Michigan.

51. As a direct and proximate result of Defendants' violation of public policy, Chief Barton has been placed in financial distress and suffered a loss of earnings, benefits, earning and benefit capacity and the ability to work, and he will continue to suffer such losses in the future. In addition, Chief Barton has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Chief Barton respectfully requests that this Court award him monetary damages in excess of $75,000.00, to wit: $10,000,000.00 including

punitive or exemplary damages, as well as costs, and any attorneys' fees and any other legal and any other equitable relief to which he may be entitled. Chief Barton's monetary damages include, but are not limited to:

    (a). economic losses, such as lost earnings, benefits, earning and benefit capacity, and the ability to work;

    (b). all of his compensable litigation costs in this case, including expert witness fees, copying charges, and filing fees, among other things; and

    (c). his attorneys' fees in this case that can be taxed as costs.

### Count III – Tortious Interference with Contract

52. Chief Barton incorporates the foregoing paragraphs by reference.

53. At all times relevant to this Complaint, Chief Barton had a contractual relationship with the City.

54. At all times relevant to this Complaint, Mayor Neeley knew about Chief Barton's contractual relationship with the City.

55. Mayor Neeley intentionally engaged improper conduct while knowing that such conduct would likely cause the termination of Chief Barton's contract with the City.

56. As a direct and proximate result of Mayor Neeley's tortious interference with Chief Barton's contract, Chief Barton has been placed in financial distress and suffered a loss of earnings, benefits, earning and benefit capacity and

the ability to work, and he will continue to suffer such losses in the future. In addition, Chief Barton has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Chief Barton respectfully requests that this Court award him monetary damages in excess of $75,000.00, to wit: $10,000,000.00 including punitive or exemplary damages, as well as costs, and any attorneys' fees and any other legal and any other equitable relief to which he may be entitled. Chief Barton's monetary damages include, but are not limited to:

(a). economic losses, such as lost earnings, benefits, earning and benefit capacity, and the ability to work;

(b). all of his compensable litigation costs in this case, including expert witness fees, copying charges, and filing fees, among other things; and

(c). his attorneys' fees in this case that can be taxed as costs.

Respectfully submitted,

/s/   Arnold E. Reed
ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
Harolyn D. Beverly (P44028)
*Attorneys for Plaintiff-Appellee*
17515 West Nine Mile Road, Suite 425
Southfield, MI  48075
(248) 855-6330
areed@arnoldreedlaw.com
hbeverly@arnoldreedlaw.com

Dated: January 9, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-10051 |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| SHELDON NEELEY, and | ) | |
| CITY OF FLINT, MICHIGAN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### First Amended Jury Demand

Plaintiff Raymond Barton demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/     Arnold E. Reed
ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
Harolyn D. Beverly (P44028)
*Attorneys for Plaintiff-Appellee*
17515 West Nine Mile Road, Suite 425
Southfield, MI  48075
(248) 855-6330
areed@arnoldreedlaw.com
hbeverly@arnoldreedlaw.com

Dated: January 9, 2023