## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2-23-cv-10051 |
| | ) | |
| v. | ) | Hon. Nancy G. Edmunds |
| | ) | Magistrate Judge Kimberly G. Altman |
| SHELDON NEELY, and | ) | |
| CITY OF FLINT, MICHIGAN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
Harolyn Beverly (P44028)
*Attorneys for Plaintiff*
17515 W. Nine Mile Road, Suite 425
Southfield, MI 48075
(248) 855-6330; Fax: (248) 855-6340
areed@arnoldreedlaw.com
hbeverly@arnoldreedlaw.com

THE WILLIAMS FIRM, P.C.
Kendall B. Williams (P27896)
Chelsea S. Sown (P77288)
*Attorneys for Defendants*
8263 S. Saginaw St., Ste. 6
Grand Blanc, MI 48439
(810) 695-7777
kwilliams@thewilliamsfirm.com
cdown@thewilliamsfirms.com

---

### PLAINTIFF'S AMENDED RESPONSE
### TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Raymond Barton, by and through his counsel, Arnold E. Reed & Associates, P.C., asks this Court to deny Defendants' Motion to Dismiss for the factual and legal reasons set forth in the accompanying brief.

Respectfully submitted,

Dated: April 13, 2022

/s/    Arnold E. Reed
ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
*Attorney for Plaintiff*
17515 West Nine Mile Road, Suite 425
Southfield, MI  48075
(248) 855-6330
areed@arnoldreedlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RAYMOND BARTON,       )
                         )
        Plaintiff,      )     Civil Action No. 2-23-cv-10051
                         )
v.                     )     Hon. Nancy G. Edmunds
                         )     Magistrate Judge Kimberly G. Altman
SHELDON NEELY, and    )
CITY OF FLINT, MICHIGAN   )
                         )
        Defendants.   )
                         )

---

ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
Harolyn Beverly (P44028)
*Attorneys for Plaintiff*
17515 W. Nine Mile Road, Suite 425
Southfield, MI 48075
(248) 855-6330; Fax: (248) 855-6340
areed@arnoldreedlaw.com
hbeverly@arnoldreedlaw.com

THE WILLIAMS FIRM, P.C.
Kendall B. Williams (P27896)
Chelsea S. Sown (P77288)
*Attorneys for Defendants*
8263 S. Saginaw St., Ste. 6
Grand Blanc, MI 48439
(810) 695-7777
kwilliams@thewilliamsfirm.com
cdown@thewilliamsfirms.com

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS
## <u>AMENDED RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>

## STATEMENT OF ISSUES PRESENTED

I.   **Has Barton stated a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights because he has alleged that he was discharged from his position as the City's fire chief for exercising his rights to free speech and political association in his capacity as a private citizen?**

Defendants answer "no."

Plaintiff answers, "yes."

II.  **Is Barton's cause of action under Michigan's public policy exception pre-empted when Barton does not have any specific statutory remedy available and because Barton has sufficiently alleged a violation of public policy by the City?**

Defendants answer "yes."

Plaintiff answers, "no."

III. **Is the City precluded from invoking governmental immunity on Barton's claims because Michigan law bars immunity for the kind of conduct that Barton alleges?**

Defendants answer "no."

Plaintiff answers, "yes."

IV.  **To the extent that Neeley's unlawful actions were outside the scope of his official duties, is he personally precluded from invoking governmental immunity because Michigan law bars immunity for the kind of conduct that Barton alleges?**

Defendants answer "no."

Plaintiff answers, "yes."

V.   **Has Barton sufficiently alleged a cause of action for tortious interference by alleging that the violation of his First Amendment rights is a violation of public policy and that his employment contract was terminated as a result of this violation?**

Defendants answer "no."

Plaintiff answers, "yes."

VI.    **Must Barton's complaint contain the precise phrase "in his individual capacity" to provide Defendants with proper notice that Neeley is being sued in his individual capacity?**

Defendants answer "yes."

Plaintiff answers, "no."

## CONTROLLING AUTHORITY

**Issue I:**

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)

*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 (1990)

*Cioffi v. Averill Park Cent. Sch. Dist.*, 444 F.3d 158 (2d Cir. 2006)

*Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*,605 F.3d 345, 348 (6th Cir.), cert. denied, 562 U.S. 1062 (2010)

*Handy–Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012)

**Issue II:**

*Pilarowski v. Brown*, 76 Mich. App. 666; 257 N.W.2d 211 (1977)

**Issue III:**

*Ross v. Consumers Power Co*. (On Rehearing), 420 Mich. 567; 363 N.W.2d 641 (1984)

*Smith v. Department of Pub. Health*, 428 Mich. 540; 410 NW2d 749 (1987), *aff'd sub nom. Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

**Issue IV:**

*Richardson v. Jackson Cty.*, 432 Mich. 377, 387; 443 N.W.2d 105 (1989)

**Issue V:**

*Total Quality, Inc. v Fewless*, 332 Mich. App. 681, 958 N.W.2d 294 (2020), *leave app. den.*, 507 Mich 899, 956 N.W.2d 190 (2021)

**Issue VI:**

*Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)

*Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995)

## <u>INTRODUCTION</u>

Plaintiff Raymond Barton was discharged from his position as Fire Chief of Defendant City of Flint ("the City") because he would not sacrifice his personal integrity and reputation to serve the partisan political interests of Flint's mayor, Defendant Sheldon Neeley. Neeley snd/or the City retaliated against Barton because Barton refused to put his own name on a controversial decision that Neeley made and that served Neeley's personal political interests at the expense of the public interest. Because Neeley's conduct implicated Barton's personal reputation and his right to direct his own political loyalty, the discharge infringed upon Barton's First Amendment rights as a private citizen.

After two African American boys died in a minor house fire in May 2022, Barton conducted an investigation and determined that the deaths were caused by the gross negligence and malfeasance of two white firefighters. He reported his factual findings to Defendant Mayor Sheldon Neeley and recommended that the firefighters be discharged.

Barton's report and recommendation were a problem for the Mayor. Neeley was running for re-election and his wife was running for state legislature, and they both needed the support of the firefighter's union, which would object to both the finding of misconduct by the firefighters and the recommendation for their discharge. Neeley also thought that a racial controversy would be bad for his election prospects.

Neeley wanted Barton to change his findings and recommendations, falsifying the nature of the firefighters' conduct and keeping the firefighters on the force, giving them only a paid suspension. For political reasons, Neeley did not want his fingerprints on the decision, so he also wanted Barton to make a public announcement that the findings and disciplinary decision were his alone. Barton refused to misrepresent his personal opinion to the public for the sole purpose of

helping the Neeleys' campaigns. Barton executed Neeley's decision about the disciplinary action, but he would not allow Neeley to appropriate his personal reputation for honesty and integrity, which he had developed in over thirty years of service in the Fire Department.

When the firefighters' conduct became a public issue, Barton faced questions at a public meeting about his findings and disciplinary recommendations; and he responded by stating his personal opinion about what happened at the fire and about how the firefighters should have been disciplined. Nine days after the election, Neeley fired him.

On the basis of these alleged facts, Barton asserts a general legal theory that his discharge infringed his First Amendment right to speak as a private citizen on an issue of public concern and his First Amendment right to choose how to direct his loyalty in an election. Barton's theory is principally framed under 42 U.S.C. § 1983 as a deprivation of his federal rights by Neeley, who was acting under color of state law but in his individual capacity. As an alternative theory, and to the extent that Neeley might have been acting in official capacity, Barton asserts cause of action against his employer, the City, under Michigan's public policy exception to the doctrine of at-will employment. As another aspect of this alternative theory, Bartion alleges that Neeley tortiously interfered with his contractual relationship with City by undermining Barton's First Amendment rights and engineering Barton's discharge.

Defendants' principal argument is that they never violated Barton's rights because Barton has only alleged facts showing that he acted in his official capacity and that never exercised his First Amendment rights as a private citizen. This argument fails because it erroneously conflates speech discussing the subject matter of official duties with speech made in an official capacity. The argument also fails because Barton has alleged that Neeley sought to exploit Barton's personal reputation to assist Neeley's candidacy, thereby implicating Barton's rights as a private citizen.

Defendants make other arguments about preemption of Barton's causes of action and about their own immunity, all of which are flatly contradicted by case law.

For all of these reasons, Barton asks this Court to deny Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

I.    **Barton's General Allegations**

Barton worked as a firefighter in Flint for nearly thirty years, between 1987 and his retirement in 2014. (Complaint at ¶ 9, ECF# 2, PageID 18). Two years after his retirement, Karen Weaver, who was then the City's mayor, asked him to return to service as Fire Chief. (*Id.*). Barton's longstanding reputation for honesty and integrity was an important factor in Weaver's decision to make him Fire Chief. (*See* Complaint at ¶¶ 10-11; ECF# 2, PageID 18).

The background event for Barton's allegations was a two-alarm house fire in Flint on May 28, 2022. (Complaint at ¶ 13, ECF# 2, PageID 19). Although the fire itself was fairly minor and was confined to the first-floor living room, it caused the death of two African-American boys, ages 9 and 12, who lived in the home and were upstairs in a bedroom at the time of the fire. (Complaint at ¶¶ 13-19, ECF# 2, PageID 19-21). After conducting a thorough investigation, Barton determined that the boys died because two white firefighters didn't bother to search the upstairs rooms even though they told other firefighters that they had. (Complaint at ¶ 20, ECF# 2, PageID 21).

Barton reported his factual findings to Neeley and made an official recommendation that the two firefighters should be discharged for gross negligence and malfeasance. (Complaint at ¶ 20, ECF# 2, PageID 21). Barton alleges that Neeley instructed him to change his factual findings and his recommendation for partisan political reasons. (Complaint at ¶¶ 21-24, ECF# 2, PageID 21). Neeley was running for re-election and his wife was running for election to the Michigan Legislature, and Neeley wanted to assure that both he and his wife would retain the support of the

3

firefighters' union and, more generally, white voters. (Id.). Neeley wanted to cover up the facts about the firefighters' negligence and malfeasance and to limit any disciplinary action to a paid suspension. (Id.). Moreover, Neeley wanted Barton to present the false findings and the more lenient discipline as Barton's own idea. Barton alleges that, in this connection, Neeley wanted to appropriate Barton's personal reputation in the community for his own political purposes. (Id.).

Barton alleges that he refused to go along with Neeley's plan to lie about what happened at the fire. (Complaint at ¶¶ 22-35, ECF 2, PageID 21-23). Barton insisted that he would not lie to the public about the nature of firefighters' conduct or about his own opinions regarding the appropriate disciplinary action. (Id.).

Despite Barton's unequivocal position, Neeley unilaterally changed the Fire Department's official recommendation about the discipline for the two firefighters, and he attributed the change to Barton. (Complaint at ¶ 30, ECF# 2, PageID 22). Neeley also instructed Barton to make a public statement in which Barton would describe the change as Barton's own personal decision. (Complaint at ¶¶ 32-33, ECF# 2, PageID 23). Barton refused to make that statement. (Complaint at ¶¶ 34-35, ECF# 2, PageID 23).

Rumors began to circulate in the community about the decision-making behind the change in the Fire Department's official recommendation. Barton alleges that, at a city council meeting, family members of the two boys and others asked him point-blank whether he had personally made the decision to change the findings about the firefighters' conduct and the Department's disciplinary recommendation. (Complaint at ¶¶ 36-39, ECF# 2, PageID 23-24). Barton responded honestly to the questions. (*Id.*).

Barton alleges that, nine days after winning re-election, Neeley demanded Barton's resignation. (Complaint at ¶ 40, ECF# 2, PageID 24). When Neeley refused to resign, Neeley

discharged him. (Complaint at ¶ 41, ECF# 2, PageID 24). Barton alleges that his discharge was retaliation for his refusal to support Neeley's political candidacy by falsely representing his personal opinions to the public. (Complaint at ¶ 42, ECF# 2, PageID 24).

II.     **Barton's Causes of Action**

On the basis of his common allegations, Barton asserts three causes of action. The first was against Neeley in his individual capacity and arises from 42 U.S.C. § 1983. Barton alleges that, while acting under color of state law, Neeley violated Barton's federal constitutional rights to free speech and free political association by discharging Barton because Barton refused to use his personal reputation to serve Neeley's personal electoral interests. (Complaint at ¶¶ 44-46, ECF# 2, PageID 25-26). Barton's second cause of action alleges that Neely and/or the City terminated his at-will employment in violation of Michigan public policy. (Complaint at ¶¶ 48-51, ECF# 2, PageID 26-27). In this connection, Barton alleges that his refusal to lie to the public for Neeley's personal benefit or to take personal responsibility for Neeley's own decisions was conduct that was protected by Michigan public policy. Barton's third cause of action is against Neeley alone and alleges that Neeley's retaliatory motives unlawfully interfered with Barton's employment contract with the City. (Complaint at ¶¶ 53-56, ECF# 2, PageID 28-29).

**LEGAL STANDARD**

When a court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted). A court should not dismiss the complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations" but should identify "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555 (2007) (citations omitted). That is, the complaint must not attempt to package legal conclusions as factual allegations. *Id*. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

The Supreme Court has explained that allegations can be sufficient to withstand a motion to dismiss even if the district court concludes that it is unlikely that the plaintiff can prove them:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**ARGUMENT**

I.    **Barton has stated a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights because he has alleged that he was discharged from his position as the City's fire chief because he exercised his rights to free speech and political association in his capacity as a private citizen.**

      A.    *Elements of a Claim under § 1983*

The Sixth Circuit has held that "[t]here are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy–Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).

Defendants do not contend that Barton has failed to allege that Neeley acted under color of state law; nor could they because Barton has expressly made that allegation. (Complaint at ¶ 44; ECF# 2, PageID 10). Consequently, Defendants' arguments focus on the question whether Barton has alleged the deprivation of a right secured by federal law.

To sufficiently allege a deprivation of a federal right, the plaintiff must allege facts that establish that:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Fritz,* 592 F.3d at 723 (citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) and *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)); *see also Handy -Clay*, 695 F.3d at 539.

Defendants focus on the first and third elements of this test, arguing that Barton has not alleged sufficient facts to establish that he engaged in legally protected conduct and that Barton has not alleged causation because he has not alleged facts showing coercion or conditionality. Both

of these positions depend upon a mischaracterization of Barton's allegations and a misrepresentation of the applicable law.

       B.     *Barton alleges that he engaged in two kinds of conduct protected by the First Amendment: private speech and political association.*

           1.     *Barton has alleged private speech by alleging that he was compelled to make personal endorsement of policy decisions and factual findings with which he disagreed*

The Supreme Court has held that a state or a state agency, such as a municipality, "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (citations omitted). Although the circumstances of public employment can limit the scope of a public employee's constitutionally protected interest, "the First Amendment protects a public employee's right, under certain circumstances, to speak as a citizen on matters of public concern." *Handy–Clay*, 695 F.3d at 539 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). "[T]hese principles are meant to protect not only the constitutional rights of public employees but also 'the public's interest in receiving the well-informed views of government employees engaging in civic discussion.'" *Handy–Clay*, 695 F.3d at 540 (quoting *Garcetti*, 547 U.S. at 419).

When defining the scope of a public employee's constitutionally protected free speech rights, courts apply a three-part test to balance the employee's liberty interest, the public's interest in informed speech on matters of public concern, and the state's interest in workplace efficiency. *Handy–Clay*, 695 F.3d at 540 (citing *Garcetti*, 547 U.S. at 419). To establish that he engaged in protected speech, a public-employee plaintiff must show that:

> (1) that her speech was made as a private citizen, rather than pursuant to her official duties; (2) that her speech involved a matter of public concern; and (3) that her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees."

*Handy–Clay*, 695 F.3d at 540 (quoting *Garcetti*, 547 U.S. at 417-18).

Protected speech can include the refusal to speak or to express certain ideas as well as a person's own affirmative statements. The Supreme Court has held that the First Amendment right of free speech includes the right to be free from compulsion to adopt opinions with which the speaker disagrees. *Janus v. American Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018); *see also West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943). As the Supreme Court explained, "[f]orcing free and independent individuals to endorse ideas they find objectionable" violates the First Amendment right to free speech. *Janus*, 138 S. Ct. at 2464. The Sixth Circuit has held that, in a First Amendment retaliation case, a plaintiff could prove that he engaged in protected speech by showing that he was discharged for "his unwillingness to agree fully with [his employer's] policy." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 719 (6th Cir. 2001). The *Vaughn* Court held that "this mental dissent could be interpreted as protected by the First Amendment. Since termination would be enough to chill First Amendment rights, and the termination was a consequence of the protected conduct, a *prima facie* case of retaliatory discharge has been stated." *Id.*

In determining whether a plaintiff's affirmative speech or his refusal to speak was undertaken in his capacity as a private citizen, courts "look to the content and context of the plaintiff's speech to determine whether her statements were made pursuant merely to her professional duties." *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir.), *cert. denied*, 562 U.S. 1062 (2010); *see also Handy–Clay*, 695 F.3d at 540. In general, the assessment of the context for speech includes a consideration of to whom the employee was speaking and the purpose for the speech. Typically, statements made within the chain of command or at the direction of the government are considered to be made in the context of the employee's

official duties; statements made for the speaker's own purposes and outside the chain of command are considered to be in the speaker's private capacity. *See Fox*, 605 F.3d at 349 (comparing *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538 (6th Cir. 2007) and *See v. City of Elyria*, 502 F.3d 484 (6th Cir. 2007)).

For example, in *Fox*, the court concluded that the plaintiff did not engage in protected conduct when she complained to supervisors that she was being compelled to perform duties in violation of official policy. *Fox*, 650 F.3d at 347. Similarly, in *Weisbarth*, the court concluded that the plaintiff had not engaged in protected conduct when she expressed her dissatisfaction about employee morale and performance to a consultant who had been hired by the government agency that employed her. *Weisbarth*, 499 F.3d at 543-44. By contrast, in *See*, the court concluded that the plaintiff, a police officer, had engaged in protected conduct when he reported corruption in the police department to the FBI. *See*, 502 F.3d at 493.

In *Fox*, the Sixth Circuit explicated the difference between protected and unprotected speech by public officials by discussing a Second Circuit opinion. *Fox*, 605 F.3d at 350 n.2 (citing *Cioffi v. Averill Park Cent. Sch. Dist.*, 444 F.3d 158 (2d Cir. 2006)). The facts in *Cioffi* closely parallel the facts that Barton has alleged, and the case demonstrates why Barton has sufficiently alleged that he engaged in protected speech.

In *Cioffi*, the plaintiff was the athletic director at a public school who complained about incidents of hazing and sexual assault at their school in two different ways: (1) by writing a letter to the school superintendent; and (2) by holding a press conference. *Cioffi*, 444 F.3d at 160-61. The Second Circuit noted that Cioffi's conduct, especially his press conference was protected speech because it advanced:

> a theory of what went wrong and who is to blame. We extend First Amendment protection to public employees not only in furtherance of their interest in speaking,

but also in furtherance of the public's interest in obtaining information about matters of public import from those in the best positions to know most about it; or, as the Supreme Court instructs, "[g]overnment employees are often in the best position to know what ails the agencies for which they work."

*Cioffi*, 444 F.3d at 166-67 (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994)).

Defendants maintain that, if proven, Barton's allegations show that he was discharged for speech that fell within the scope of his official duties. According to Defendants, Barton "cannot argue that his statements regarding a City investigation into misconduct by his subordinate employees and his recommendation regarding discipline for those employees is *outside* the scope of his job duties as the Fire Chief." (Defendants Brief at 9-10; ECF# 10, PageID 62-63) (emphasis in original). This argument fails because it focuses solely on the content of the speech and ignores the context in which it was made.

Barton has alleged facts showing that he was discharged for exercising his free speech rights in his capacity as a private citizen, both when he resisted Neeley's attempt to compel his speech and when spoke affirmatively in response to public questioning at the city council meeting. In both of these contexts, Barton's exercise of his free speech rights occurred ***outside*** the scope of his official duties. Barton alleges that Neeley did not merely order a change in the official findings and recommendations; Neeley wanted Barton to publicly assume personal responsibility for the change and to make a public denial of his dissent from Neeley's position. (Complaint at ¶¶ 21-24, 32-35; ECF# 2, PageID 21, 23).  Neeley's demand does not pertain to the official duties of the City's Fire Chief; it reflects an attempt to compel Barton's assent to a policy decision and to appropriate Barton's personal reputation for honesty and integrity, all in service of Neeley's own private political interests. Simply stated, there is nothing official in Neeley's effort to force Barton to be the public face of Neeley's own decision or to serve Neeley's interests as a political candidate. In addition, Barton alleges that Neeley retaliated against him for honestly stating his opinions at a

11

public meeting in response to questions from the public. (Complaint at ¶¶ 36-39, ECF# 2, PageID 23-24). Informing the public about his personal views is not part of his official duties. It is akin to the press conference held by the plaintiff in *Cioffi* or the FBI report filed by the plaintiff in *See* because it involves Barton's own personal theory "of what went wrong and who is to blame." *Cioffi*, 444 F.3d at 166. Although Barton's public statement describes actions that Barton took in his official capacity, the making of the statements to the public was not part of his official duties.

Barton has also alleged facts showing that his speech involved a matter of public concern. Barton's conclusions and opinions about whether and how to discipline the two firefighters pertained to important public questions: whether some firefighters in the City might be dishonest or grossly negligent in the performance of their duties; whether those firefighters might let racism impair their performance of their duties; and whether the Fire Department was willing to hold firefighters accountable for malfeasance, dishonesty, or even sheer incompetence. As in *See*, such questions about the integrity of a government agency are matters of public concern.

Finally, Barton's allegations describe factual circumstances in which his private interest in expressing his views outweighs the City's interest in workplace efficiency. Barton's refusal to adopt Neeley's personal viewpoint or to represent Neeley's personal political interests did not impair the efficient operation of the Fire Department or obstruct the implementation of Neeley's preferred policy. The public has a right to know whether Neeley put his private, partisan political interests above the public interest when exercising his authority over Barton and over the Fire Department. Barton's refusal to cover up for Neeley served the public interest in transparency and accountability for elected officials.

Because Barton has alleged facts that would satisfy the three-part test from *Garcetti* and *Handy-Clay*, he has alleged facts that would permit a jury to find that he engaged in

constitutionally protected conduct when he expressed his own personal opinions and resisted Neeley's efforts to compel him to speak falsely in the service of Neeley's personal political interests.

>      2.      *Barton has alleged the infringement of his rights of political association because he has alleged that he was discharged for not providing political support to Neeley.*

Barton's allegations support an alternative theory regarding the deprivation of his federal rights. When Defendants discharged him for not adopting and expressing Neeley's politically expedient positions, they violated his First Amendment right to political association as well as his right to free speech.

The Supreme Court has held that conditioning employment decisions on political belief and association "plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 (1990) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). Political discrimination is presumptively prohibited as an infringement on First Amendment interests. *See Elrod*, 427 U.S. at 360. But the Supreme Court has also recognized certain narrow exceptions to this prohibition. *See, e.g., Elrod*, 427 U.S. at 360-63. "[I]f conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights." *Id.; see also Branti*, 445 U.S. at 507.

Under the principles set forth by *Elrod* and *Branti*, the First Amendment "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for

the position involved." *Rutan*, 497 U.S. at 64. Thus, "conditioning [employment] on political beliefs and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." Id. at 78. A sufficiently vital interest may exist for policymaking employees: "a policymaking, confidential employee can be discharged from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Stegmaier v. Trammell*, 597 F.2d 1027, 1034 (5th Cir. 1979). But this is true only when "party affiliation is an appropriate requirement" for the public office in question. *Branti*, 445 U.S. at 518. Federal courts have also held that this principle applies to an affiliation with a specific candidate as well as an affiliation with a political party. *See Jordan v. Ector Cty.*, 516 F.3d 290, 295-96 & n.17 (5th Cir. 2008) (citing cases).

Barton has alleged facts that would support a theory that Defendants violated his First Amendment right of political association. According to the allegations in Barton's Complaint, Neeley retaliated against Barton for refusing to make public statements that would serve the interests of Neeley's candidacy for mayor and the candidacy of Neeley's wife for the Michigan Legislature. (*See* Complaint at ¶¶ 21-24, ECF# 2, PageID 21). Barton has not alleged any facts showing that Neeley's demand for fealty served any legitimate government interest. This was not a situation where Barton was discharged because he obstructed the Mayor's ability to direct or implement official policy. When Neeley overruled him, Barton implemented Neeley's decision. Rather, Barton was discharged because he would not give Neeley political cover by informing the public that Neeley's decision was his own and because he would not make false statements to the public in service of Neeley's narrow personal interests. Neither the City nor the Fire Department have a "vital interest" in compelling Barton to provide political cover for Neeley's re-election

14

campaign and for the campaign of Neeley's wife. If all of Barton's allegations are accepted as true, then Barton has set forth a viable theory for the infringement of his right of political association.

> C.   *Barton has alleged a causal connection between his protected conduct and his discharge.*

Defendants assert that Barton has failed to allege facts showing coercion or conditionality. (Defendants' Brief at 6; ECF# 10, PageID 59). This assertion appears to be an argument that Barton has failed to sufficiently allege a causal connection between his constitutionally protected conduct and his discharge. But, contrary to Defendants' argument, Barton has sufficiently alleged a causal connection between his discharge and his protected conduct because he has alleged facts showing a close temporal connection.

To establish causation in a First Amendment retaliation cause of action, a plaintiff must show that the protected conduct "was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist*, 444 F.3d 158, 167-68 (2d Cir. 2006). A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment decision. *Id*.

Barton has alleged that Neeley infringed on his First Amendment rights during a period that began shortly after the house fire on May 28, 2022 and extended through the summer and fall of that year. Barton has also alleged that Neeley first demanded his resignation nine days after Election Day in 2022 and that he was discharged immediately after he refused to resign. (Complaint at ¶¶ 40-42, ECF# 2, PageID 24). The alleged time lapse between Barton's protected conduct and his unlawful discharge is short enough to permit an inference of causation. Accordingly, Barton has adequately alleged a causal connection between his protected conduct and Defendants' retaliatory action.

II.     **Barton's cause of action under Michigan's public policy exception is not pre-empted because Barton does not have any specific statutory remedy available and because Barton has sufficiently alleged a violation of public policy by the City.**

Michigan law generally provides that an at-will employee can be discharged for any reason or no reason at all. *Toussaint v. Blue Cross Blue Shield of Mich*., 408 Mich. 579; 292 N.W.2d 880 (1980). "[A]n exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v. Michigan Consol. Gas Co*., 412 Mich. 692, 695; 316 N.W.2d 710 (1982); *see also Morrison v. B. Braun Med. Inc*., 663 F.3d 251, 256 (6th Cir. 2011) (applying Michigan law). Thus, the "public policy exception" is, in effect, a common law claim for breach of an employment contract.

Defendants argue that Barton's public policy cause of action is pre-empted by statute, but they do not identify a particular statute that has such a pre-emptive effect.[1] (Defendants' Brief at 12-13; ECF# 10, PageID 65-66). In this connection, Defendants cite the Michigan Supreme Court's opinion in *Dudewicz v. Norris-Schmid, Inc*., 443 Mich. 68; 503 N.W.2d 645, 650 (1993), but that case is inapposite because it does not identify a statutory remedy that was available to Barton in lieu of a cause of action under the public policy exception.

In *Dudewicz*, an employee was assaulted by his supervisor and filed a police report to bring criminal charges. The employer demanded that the employee drop the charges, and, when the employee refused, the employer discharged him. *Dudewicz*, 443 Mich at 70-72. The employee brought a claim under Michigan's Whistleblower Protection Act, MCL 15.361, *et seq*. ("WPA"), and the public policy exception. *Id*. The Michigan Supreme Court concluded that the WPA

---

[1] Defendants actually concede that there Barton does not have any statutory remedy when they argue elsewhere in their brief that, under Michigan law, there is no statutory basis for a claim arising from the hiring or firing of a public employee. (Defendants' Brief at 13-15; ECF# 10, PageID 66-68).

preempted the public policy claim because the WPA provided relief to persons who were discharged in retaliation for reporting wrongful conduct to a public agency. *Id*. at 78-80. The Court also concluded that filing a police report against the supervisor counted as whistleblowing for the purposes of the WPA. *Id*.

Here, Barton does not have a WPA claim because he did not – and could not have – reported Neeley to a government agency for unlawful conduct. Neely's decision to countermand Barton's recommendation and retain the firefighters was not unlawful in itself; Neeley acted umlawfully only when he violated Barton's First Amendment rights by demanding that Barton take personal responsibility for the decision. Consequently, the statutory remedy that had pre-emptive effect in *Dudewicz* is simply inapplicable here. And Defendants have not identified any Michigan statute other than the WPA under which Barton could have asserted a claim arising from his discharge.

Defendants also argue that Barton's claim under the public policy exception should be dismissed because the Complaint is not sufficiently specific about which public policy was violated here. (Defendants' Brief at 11; ECF# 10, PageID 64). This argument fails because Barton has alleged a violation of his First Amendment rights, and the Michigan Court of Appeals has held that an employee of a government agency can assert a cause of action under the public policy exception when he alleges that the agency discharged him in retaliation for exercising his First Amendment rights. This is because the First Amendment represents an established limitation on the authority of government to limit private speech. *See Pilarowski v. Brown*, 76 Mich. App. 666; 257 N.W.2d 211 (1977).

III. **The City is not entitled to governmental immunity on any of Barton's claims because Michigan law bars immunity for the kind of conduct that Barton alleges.**

Defendants argue that Barton's claims against the City are all barred by Michigan's governmental tort immunity statute and that Barton does not allege any facts showing how his claims would fit under any of the statutory exceptions to governmental immunity. (Defendants' Brief at 13-15; ECF# 10, PageID 66-68). Barton only asserts one claim against the City: for the wrongful termination of his employment contract, in violation of public policy. Governmental tort immunity does not apply to this claim because Barton is alleging a breach of his employment contract. *See Ross v. Consumers Power Co.* (On Rehearing), 420 Mich. 567; 363 N.W.2d 641, 647 (1984) (holding that governmental immunity does not apply to breach of contract allegations). *Meadows v. City of Detroit*, 164 Mich. App. 418, 433; 418 N.W.2d 100 (1987) (same).

IV. **Neeley is not entitled to immunity to the extent that his unlawful actions were outside the scope of his official duties because Michigan law bars immunity for the kind of conduct that Barton alleges.**

Defendants argue that Neeley is also protected by governmental immunity because all of his alleged conduct fell within the scope of his official duties. (Defendants' Brief at 15; ECF# 10, PageID 68). This argument fails with respect to Barton's § 1983 claim because there is no immunity under Michigan law for claims brought under federal civil rights statutes. *Smith v. Department of Pub. Health*, 428 Mich. 540; 410 NW2d 749 (1987), *aff'd sub nom. Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Neeley cannot claim immunity for Barton's tortious interference claim for similar reasons. In that claim, Barton alleges that Neeley engaged in wrongful conduct as a means of interfering with Barton's employment contract; and that wrongful conduct involves a violation of Barton's constitutional rights. Moreover, Barton has alleged that Neeley's actions were motivated by his personal political interests, specifically his personal interest in re-election. All of this describes conduct that falls outside the scope of Neeley's

official duties. To the extent that he was acting outside of the scope of his duties, Neeley cannot claim immunity because government officials are not entitled to immunity for *ultra vires* conduct or for the improper performance of authorized duties. *Richardson v. Jackson Cty.*, 432 Mich. 377, 387; 443 N.W.2d 105 (1989).

In the alternative, if Neeley was somehow acting within the scope of his official duties, the City would be liable for Barton's wrongful discharge under the public policy exception. But, as noted in the previous argument, the City could not claim immunity in this event because Michigan law does not provide immunity for the termination of an employment contract in violation of public policy.

V.  **Barton has sufficiently alleged a cause of action for tortious interference because he alleges that the violation of his First Amendment rights is a violation of public policy and that his employment contract was terminated as a result of this violation.**

Defendants argue that Barton has failed to sufficiently allege a cause of action for tortious interference with contract because he has not sufficiently alleged that his discharge constituted a breach of contract or that Neeley was unjustified in deciding to discharge Barton. (Defendants' Brief at 16-18; ECF# 10, PageID 69-71). This argument fails because it depends upon a misunderstanding or misstatement of Barton's legal theory.

Under Michigan law, a cause of action for tortious interference with contract applies to a circumstance in which "where the alleged tortfeasor instigates a breach of contract." *Feaheny v. Caldwell*, 175 Mich. App. 291, 301; 437 N.W.2d 358 (1989) (citation omitted); *see also Knight Enters. v RPF Oil Co.*, 299 Mich. App. 275; 829 N.W.2d 345 (2013). The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract with a third party; (2) knowledge by the defendant of the contract; (3) intentional and improper interference by the defendant, inducing or causing a breach, disruption, or termination of the contract; and (4) resultant

19

damage to the party whose contract has been breached, disrupted, or terminated. *Total Quality, Inc. v Fewless*, 332 Mich. App. 681, 958 N.W.2d 294 (2020), *leave app. den.*, 507 Mich 899, 956 N.W.2d 190 (2021).

     As one of his alternative legal theories, Barton alleges that, if his discharge is attributable to the City as an official act, Neeley can still be liable in his personal capacity for precipitating the City's termination of Barton's employment contract. Barton also alleges that Neeley's precipitating conduct was improper or wrongful because it involved an infringement of Barton's First Amendment rights, as explained in detail in Argument I. Barton also alleges that Neeley knew of Barton's employment contract and that Barton suffered damages as a result of the termination. (*See* Complaint at ¶¶ 53-56, ECF# 2, PageID 28-29).   This is a sufficient allegation of tortious interference with contract.

## VI.   Defendants have been given proper notice that Neeley is being sued in his individual capacity because no rule requires that a § 1983 complaint contain the precise phrase "in his individual capcity."

     Defendants contend that Barton's § 1983 claim must be dismissed because the Complaint does not expressly state that Neeley is being sued in his individual capacity. (Defendants' Brief at 10-11; ECF# 10, PageID 63-64). To support this argument, Defendants cite *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (*en banc*) and *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002). But these cases contradict Defendants' argument that a plaintiff's § 1983 complaint must be dismissed if it does not contain the phrase "in his individual capacity" with reference to individual officials.

     Controlling precedent establishes that, in a § 1983 case, the individual defendant must be given some kind of notice that he is being sued in his individual capacity; but there is no requirement that the complaint must juxtapose the individual defendant's name with the phrase "in

his individual capacity." In *Shepherd*, the Sixth Circuit expressly held that "[w]here no explicit statement appears in the pleadings, this Circuit uses a 'course of proceedings' test to determine whether the § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable." *Shepherd*, 313 F.3d at 967-68; *Moore*, 272 F.3d at 772 ("while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' . . . failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.") (citation omitted). The Sixth Circuit has refused to dismiss a § 1983 claim where, one month after the complaint was filed, the plaintiff filed a motion stating that the defendants acted outside the scope of their employment and in bad faith. *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995).

By alleging that Neeley retaliated against Barton because Barton would not serve Neeley's narrow, personal political interests, the Complaint makes it sufficiently clear that, in Barton's § 1983 cause of action, Neeley is being sued in his individual capacity. Moreover, if the Complaint leaves any doubt about whether Neeley is being sued in either his personal or official capacity, this brief should remove that doubt. As this brief explains, through his Complaint, Barton presents alternative theories of liability that would apply if Neeley was acting within the scope of his authority and if Neeley was not. This is enough to give Neeley notice that he is being sued in his individual capacity.

## **CONCLUSION**

For all of these reasons, Plaintiff Raymond Barton asks this Court to deny Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Dated: April 13, 2022

/s/    Arnold E. Reed
ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
*Attorney for Plaintiff*
17515 West Nine Mile Road, Suite 425
Southfield, MI  48075
(248) 855-6330
areed@arnoldreedlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RAYMOND BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2-23-cv-10051 |
| | ) | |
| v. | ) | Hon. Nancy G. Edmunds |
| | ) | Magistrate Judge Kimberly G. Altman |
| SHELDON NEELY, and | ) | |
| CITY OF FLINT, MICHIGAN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

ARNOLD E. REED & ASSOCIATES, P.C.
Arnold E. Reed (P46959)
Harolyn Beverly (P44028)
*Attorneys for Plaintiff*
17515 W. Nine Mile Road, Suite 425
Southfield, MI 48075
(248) 855-6330; Fax: (248) 855-6340
areed@arnoldreedlaw.com
hbeverly@arnoldreedlaw.com

THE WILLIAMS FIRM, P.C.
Kendall B. Williams (P27896)
Chelsea S. Sown (P77288)
*Attorneys for Defendants*
8263 S. Saginaw St., Ste. 6
Grand Blanc, MI 48439
(810) 695-7777
kwilliams@thewilliamsfirm.com
cdown@thewilliamsfirms.com

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 13, 2023,  he did serve **Plaintiff's Amended Response to Defendant's Motion to Dismiss, Brief in Support, along with this Certificate of Service** upon defense counsel of record in the above-captioned matter at his/her address as disclosed on the pleadings via the Federal Court electronic filing system.

*The undersigned further declares under the penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.*

*/s/  Arnold E. Reed*
Arnold E. Reed