UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND C. BARTON,

               Plaintiff,                         No. 23-10051

v.

                                             Honorable Nancy G. Edmunds

SHELDON NEELY, and
CITY OF FLINT, MICHIGAN,

               Defendants.

_____/

**OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [10]**

Plaintiff Raymond Barton ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983 against Sheldon Neely ("Defendant Neely") and the City of Flint, Michigan ("the City") (jointly, "Defendants"). Pending before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10). Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motion to dismiss will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES IN PART and GRANTS IN PART Defendants' motion to dismiss.

**I.    Background**

**A.    Factual Background[1]**

This lawsuit arises out of the discharge of Plaintiff from his position as Flint City Fire Chief by Defendant Neely, Flint City Mayor.

On May 28, 2022, a fire broke out at a house on Pulaski Street in Flint, Michigan. (ECF No. 2, PageID.18–19.) Six firefighters arrived at the scene of the fire, where they

---

[1] These facts are taken from the First Amended Complaint (ECF No. 2), which is the operative complaint in this case.

were told that residents were likely still inside. (*Id.* at PageID.19.) Two firefighters conducted a search for persons on the second floor of the home. (*Id.*) Both claimed they thoroughly searched all rooms on the upper level and used infrared equipment and thermal imaging to aid in the search. (*Id.*) The two firefighters then returned to the first floor and told the other firefighters there was no one else in the home. (*Id.*) At that point, a second set of firefighters went up to the second floor and immediately found two young boys in a bedroom. (*Id.* at PageID.20.) Neither boy was covered by any objects or obstructions and were visible to the naked eye. (*Id.*) The boys were discovered approximately seven minutes after the first two firefighters had asserted that the house was all clear. (*Id.*) The boys died as a result of the fire. (*Id.* at PageID.17.)

The following day, Plaintiff, then Flint City Fire Chief, learned about the fire on Pulaski Street and the firefighters' failure to find the boys. (ECF No. 2, PageID.20.) Shortly thereafter, Plaintiff contacted Defendant Neely, the Flint City Mayor, to discuss what he had learned about the fire and the firefighters' "gross misconduct and malfeasance." (ECF No. 2, PageID.20.) Plaintiff also continued to investigate the matter. (*Id.*) According to Plaintiff, the firefighters did not comply with the investigation and were unwilling to correct factual misrepresentations in their official reports on the fire. (*Id.* at PageID.21.)

Plaintiff then recommended that the firefighters be suspended without pay pending a final investigation and discharged at the conclusion of the investigation. (*Id.*) When Plaintiff informed the city council and other city officials of his recommendations, Defendant Neely instructed Plaintiff to change his factual findings and recommendations. (*Id.*) Plaintiff's Amended Complaint states that Defendant Neely wanted Plaintiff to "disguise the firefighters' misconduct, suspend the firefighters with pay, and drop his

recommendation that they be discharged." (*Id.*) Defendant Neely then informed Plaintiff that Defendant Neely and his wife were up for election and re-election in their respective positions and needed the support of the firefighters' union. (*Id.*) Plaintiff interpreted that to mean that Defendant Neely wanted to "cover up [the firefighters'] wrongdoing and fraud for the sole purpose of winning personal political support from the firefighters' union." (*Id.*)

Plaintiff refused to change his findings and recommendations or make false statements about the incident. (*Id.* at PageID.22.) Defendant Neely continued to insist Plaintiff change his recommendations. (*Id.*) Plaintiff continued to refuse. (*Id.*)

In October 2023, Plaintiff learned that Defendant Neely had "unilaterally and surreptitiously" changed Plaintiff's official recommendation. (*Id.*) Defendant Neely then instructed Plaintiff to make a public statement saying Plaintiff initiated the change and agreed with it. (*Id.* at PageID.23.) Plaintiff refused. (*Id.*) Defendant Neely continued to insist that Plaintiff make the public statement. (*Id.*) Plaintiff again refused and told Defendant Neely that he would not make false statements regarding his original findings and recommendations about the incident. (*Id.*)

Later, at a public city council meeting, family members of the two boys asked Plaintiff what was being done to discipline the two firefighters. (*Id.*) They accused Plaintiff of lying to them and of breaking his promise to hold the firefighters responsible for their misconduct. (*Id.*) Plaintiff addressed the meeting and stated that he had not changed his recommendation and that he had recommended the firefighters be discharged. (*Id.* at PageID.24.)

Nine days after winning re-election, Defendant Neely told Plaintiff to resign as Fire Chief or that he would be discharged. (*Id.*) Plaintiff refused to resign. (*Id.*) Defendant Neely then discharged Plaintiff from his position as Flint City Fire Chief. (*Id.*)

### B.   Procedural Background

Plaintiff filed his initial complaint on January 9, 2023. (ECF No. 1.) On the same day he commenced the action, Plaintiff also filed his First Amended Complaint. (ECF No. 2.) Plaintiff did not add any parties or make any changes from the initial complaint. (ECF No. 2.)

Plaintiff's Amended Complaint contains three counts: (1) Deprivation of Federal Rights under Color of State Law (42 U.S.C. § 1983) (Count I), (2) Wrongful Discharge in Violation of Michigan's Public Policy (Count II), and (3) Tortious Interference with [a] Contract (Count III).

## II.   Legal Standards

### A.   Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.     Qualified Immunity

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (internal quotations and citation omitted). Qualified immunity is a threshold question the court is required to rule on "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

The first inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Giley*, 500 U.S. 226, 232 (1991). If no constitutional right was violated, there is no need for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established considering the specific context of the case, not as a broad general proposition. *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "Reasonableness" is a question of law to be decided by the trial court.

## III.   Analysis

### A.   § 1983 Claim (Count I)

Plaintiff's first claim is a § 1983 First Amendment Retaliation claim against Defendant Neely. (ECF No. 2, PageID.25.) First, Defendants argue Plaintiff has failed to clearly notify Defendant Neely that he is being sued in his individual capacity. (ECF No. 10, PageID.63.) "[Section] 1983 plaintiffs must clearly notify defendants of the potential for individual liability and must clearly notify the court of its basis for jurisdiction." *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001).

The Sixth Circuit uses a "course of proceedings" test to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold defendants personally liable. *Id.* at 772. This test considers factors including: the nature of the plaintiff's claims, requests for compensatory or punitive damages, the nature of defenses raised in response to the complaint (particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability), and whether the subsequent pleadings put the defendant on notice that he was being sued in his individual capacity. *Id.* at 772-74.

Here, Plaintiff's Amended Complaint states that his § 1983 claim against Defendant Neely is based on Plaintiff's refusal "to serve [Defendant] Neely's personal, political interests." (ECF No. 2, PageID.16.) Further, Defendants' defenses include claims of qualified immunity. (ECF No. 10, PageID.64.)

Even if this was insufficient, Plaintiff's amended response to Defendants' motion to dismiss clarifies any remaining ambiguity: "The first [cause of action] was against [Defendant] Neely in his individual capacity and arises from 42 U.S.C. § 1983." (ECF No.

6

13, PageID.122.) As the court held in *Moore*, subsequent filings in a case may rectify deficiencies in the initial pleadings—just as Plaintiff has done here. In fact, the Sixth Circuit has allowed the plaintiff to make such clarifications at later stages of the case, including in response to motions for summary judgment. *See Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995). Plaintiff has therefore sufficiently alleged he is suing Defendant Neely in his individual capacity.

Next, the Court proceeds to an analysis of whether Plaintiff's § 1983 claim will survive a motion to dismiss. The Sixth Circuit has held that to survive a motion to dismiss under 42 U.S.C. § 1983 a plaintiff must allege: (1) the defendant acted under color of state law and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The parties do not contest that Defendant Neely acted under color of state law. Therefore, the only remaining issue is whether Plaintiff properly alleged Defendant Neely's conduct deprived Plaintiff of a right secured by federal law.

A plaintiff alleging a § 1983 First Amendment retaliation claim must prove: (1) that he engaged in speech protected by the First Amendment; (2) that the defendant took a harmful "adverse action" against him; and (3) that a causal connection exists between the speech and that action. *Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302, 307 (6th Cir. 2023). Defendants make no arguments as to the second and third elements in their motion to dismiss. The Court therefore shall only address the first element regarding whether Plaintiff's speech was protected under the First Amendment.

### i.    Protected Conduct

The court determines as a matter of law whether a public employee engaged in constitutionally protected speech. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 463-64 (6th Cir. 2017). If the plaintiff is a public employee, the plaintiff must show: (1) that his speech was made as a private citizen, rather than pursuant to his official duties; (2) that his speech involved a matter of public concern; and (3) that his interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012) (citing *Garcetti v. Ceballow*, 547 U.S. 410, 417-20 (2006)). These three requirements must all be satisfied for a public employee's speech to be protected. *Evans-Marshall v. Bd. Of Educ.*, 624 F.3d 332, 338 (6th Cir. 2010).

Defendant makes no argument as to the second element (speech involving a matter of public concern). Subsequently, this court addresses only the first and third elements of protected conduct—speech made as a private citizen and the citizen's interest outweighing the state's interest.

### 1.    Speech Made as a Private Citizen or Pursuant to Official Duties

First, a plaintiff must show his speech was made as a private citizen and not pursuant to his official duties. *Handy-Clay*, 695 F.3d at 540. Public employees' statements made pursuant to their official duties are not considered statements made as citizens for First Amendment purposes. *Garcetti*, 547 U.S. at 421. The Constitution does not insulate public employees' communications from employer discipline. *Id.* "The critical question

under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014); *see also Boultan v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) (noting that the *Garcetti* exception to First Amendment protection for speech is read as "speech that an employee made in furtherance of the ordinary responsibilities of his employment").

To determine whether the speech was made as a private citizen or pursuant to the employee's official duties, courts must look to the content and context of a plaintiff's speech. *Fox v. Traverse City Area Pub. Sch. Bd. Of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010). Statements made *within* the chain of command (e.g., to a supervisor or at the direction of a government employer) are considered within the context of the employee's official duties. *See id.* at 349-50. Statements made *outside* the chain of command are more likely to be considered made in the employee's private capacity. *See id; see also Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019).

Here, Plaintiff's statements were made publicly, at a city council meeting. While Plaintiff appeared at the city council meeting in his capacity as Fire Chief, the content and context of the statements show that Plaintiff's statements were made outside the chain of command and not in furtherance of the ordinary responsibilities of his employment. Defendant Neely repeatedly instructed Plaintiff to make a public announcement saying Plaintiff initiated and agreed with changes to the original findings and recommendations regarding the fire. (ECF No. 2, PageID.23.) Plaintiff repeatedly refused. (*Id.*) Instead, Plaintiff stated that he did not make or agree to the change in the final report and that he had recommended the firefighters be dismissed. (*Id.* at PageID.24.) In his Amended

Complaint, Plaintiff explained that he made the statements because he (1) did not want to make false statements to the public about the incident as Defendant Neely requested, and (2) believed an honest response to the citizen complaints was necessary to maintain public confidence in the fire department. (*Id.*)

Therefore, the Court finds that Plaintiff's statements were made as a private citizen and not pursuant to his official duties for purposes of the First Amendment.

## 2.     Plaintiff's Interest as a Citizen Outweighs the State's Interest

Next, a plaintiff must show that his interest, as a citizen, in speaking on the matter outweighs the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Handy-Clay*, 695 F.3d at 540 (citing *Garcetti*, 547 U.S. at 417-20). So long as the speech cannot be shown or presumed to have in any way impeded the employee's performance of his daily duties or to have interfered with the regular operation of the employer generally, this element is satisfied. *See Garcetti*, 547 U.S. at 417.

Plaintiff argues his interests outweigh the City's interests because his refusal to adopt Defendant Neely's personal viewpoint and political interests did not impair the efficient operation of the Fire Department or obstruct Neely's preferred policy. (ECF No. 13, PageID.129.) Defendants fail to address if or how Plaintiff impeded the performance of his daily duties or interfered with Defendants' regular operations. Thus, the Court finds

10

Plaintiff's interests as a citizen outweigh the state's interests as an employer,[2] and Plaintiff engaged in constitutionally protected speech.

Accordingly, Plaintiff has sufficiently alleged a § 1983 First Amendment retaliation claim.

### ii.      Qualified Immunity

But while Plaintiff has sufficiently alleged the violation of a Constitutional right, the Court must still determine whether Defendant Neely is entitled to qualified immunity as to Count I.

As mentioned above, if a violation could be made out, the next step is to determine whether the right was clearly established considering the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). The plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity, but it is a low burden at the 12(b)(6) stage. *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). Plaintiff need only show it is plausible that an official's act violated a clearly established constitutional right. *Id.*

Further, while available at this stage, "'it is generally inappropriate to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Id.* at 315 (quoting *Anders v. Cuevas*, 984 F. 3d 1166, 1175 (6th Cir. 2021)). It is preferable to defer a qualified

---

[2] Due to this finding, there is no need to address Plaintiff's alternative theory regarding the deprivation of his First Amendment right to political association.

immunity determination to summary judgment because development of the factual record is often necessary to determine whether the official's actions violated a clearly established law. *See id.*

Here, both parties provide little argument as to whether the law was "clearly established." Defendants argue they did not violate Plaintiff's rights because Defendant Neely's actions were within the scope of his authority as Mayor. (ECF No. 10, PageID.68.) Plaintiff disagrees. (ECF No. 13, PageID.135.) Defendants also argue that Plaintiff failed to allege any action by Defendant Neely that violated a clearly established right, meaning he is entitled to qualified immunity under the § 1983 claim. (ECF No. 14, PageID.150.) These arguments are insufficient for a determination of whether the right was "clearly established."

The Court therefore declines to determine at this stage whether Defendant Neely's actions violated a clearly established law. Development of the factual record is necessary to adequately determine whether Defendant's actions violated a clearly established law, and subsequently whether Defendant Neely is entitled to qualified immunity.

The Court therefore denies Defendant's Motion to Dismiss as to Plaintiff's § 1983 claim (Count I).

### B. Wrongful Discharge in Violation of Michigan's Public Policy (Count II)

Next, Defendants address Plaintiff's second count, Wrongful Discharge in Violation of Michigan's Public Policy. Plaintiff admits this is his only claim against the City. (ECF No. 13, PageID.135.)

Here, Defendants argue the City is entitled to immunity because this is a tort claim, and not a breach of contract claim as Plaintiff attempts to argue in his Amended

Response. (*Id.*) "[I]n Michigan, a public policy claim for wrongful discharge sounds in tort." *Guilbeaux v. City of Detroit*, No. 5:19-CV-13728, 2020 WL 8836924, at *7 (E.D. Mich. Nov. 23, 2020). "Under Michigan's Government Tort Liability Act (GTLA) M.C.L. § 691.1401 *et seq*, a governmental agency is immune from tort liability if engaged in the exercise or discharge of a government function 'unless the plaintiff establishes the existence of a statutorily created exception to that immunity.'" *Id.* at *8 (quoting *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 227 (Mich. 2008)); *see also* M.C.L. § 691.1407(1).

Plaintiff cites no such exception in his briefs. Instead, Plaintiff attempts to argue that Count II of his Amended Complaint, "Wrongful Discharge in Violation of Michigan's Public Policy," is actually a claim for "wrongful termination of his employment contract, in violation of public policy." (ECF No. 13, PageID.135.) This is incorrect. Plaintiff clearly pled a tort, and his claim should be treated as such. The City is therefore entitled to immunity on Count II, meaning Count II is hereby dismissed.

Even if the City was not entitled to immunity, Count II would still be dismissed. Under Michigan law, an at-will employee may be discharged at any time for any or no reason. *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). However, Michigan courts have recognized an exception "to that rule, based on the principle that some grounds are so contrary to public policy as to be actionable." *Id.* Public policy in Michigan is violated when:

> (1) A statute specifically prohibits the discharge;
> (2) The employee is discharged for refusing to violate the law; or
> (3) The employee is discharged for exercising a well-established statutory right.

*Lewandowski v. Nuclear Mgt.*, 724 N.W.2d 718, 723 (Mich. Ct. App. 2006). Plaintiff cites no such exception or violation.

Further, "if a statute provides a remedy for a violation of a right, and no common-law counterpart right exists, the statutory remedy is typically the exclusive remedy." *Id.* In other words, "[a] public policy claim is sustainable . . . only where there is also not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz v. Norris Schmid, Inc.*, 503 N.W.2d 645, 650 (Mich. 1993). Here § 1983 is clearly applicable. Therefore, even if the City were not entitled to immunity, this Court would still find that an applicable statute (§ 1983) already prohibits retaliation for the conduct Plaintiff alleges, meaning his public policy claim (Count II) would fail and be dismissed as a result.

In sum, the Court finds dismissal of Plaintiff's Wrongful Discharge in Violation of Michigan's Public Policy (Count II) appropriate.

### C.    Tortious Interference with [a] Contract (Count III)

Finally, Defendants argue Plaintiff fails to state a claim for tortious interference with a contract. Under Michigan law, a plaintiff alleging tortious interference with a contract must show:

(1) The existence of a contract;
(2) A breach of the contract; and
(3) An unjustified instigation of the breach by the defendant.[3]

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005). The parties do not dispute that an at-will employment contract

---

[3] In his Amended Response, Plaintiff attempts to use the standard for tortious interference with a business relationship as the standard in this case for tortious interference with a contract. (ECF No.13, PageID.136–37.) This is incorrect, as these are two entirely different standards. "In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005).

existed between the parties, meaning only the last two elements—breach of contract and unjustified instigation of the breach—remain.

Here, Plaintiff's argument fails to address either of the remaining factors for a claim of tortious interference with a contract. Plaintiff's allegations, even when accepted as true, do not suggest that his at-will employment was breached or that there was an unjustified instigation of the breach by Defendant Neely. Instead, Plaintiff restates his claim that his First Amendment rights were infringed upon. This is insufficient to state a claim for tortious interference. The Court therefore finds dismissal of Plaintiff's Tortious Interference with [a] Contract claim (Count III) appropriate as well.

## IV.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss as to Count I, and GRANTS Defendants' motion to dismiss as to Counts II and III. Only Plaintiff's constitutional claim against Defendant Neely remains.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
Dated:  November 20, 2023    United States District Judge


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 20, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager